UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID W. KNEEPLE,

                                    Plaintiff,

              -vs-                                        14-CV-33-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                    Defendant.

_____

APPEARANCES:    KENNETH R. HILLER, ESQ., Buffalo, New York, for Plaintiff.

                        DANIEL ROBERT JANES, Social Security Administration, Office of
                        General Counsel, New York, New York, for Defendant.


          This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated December 15, 2014

(Item 15).

          Plaintiff David W. Kneeple initiated this action on January 14, 2014, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Acting Commissioner of Social Security ("Commissioner") denying

plaintiff's application for Social Security Disability Insurance ("SSDI") benefits under Title

II of the Act.  Both parties have moved for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure (*see* Items 8, 13).  For the following reasons,

plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff was born on January 18, 1961 (Tr. 40, 111).[1]   He filed an application for SSDI on November 15, 2010, alleging disability due to illiteracy, Human Immunodeficiency Virus ("HIV"), diabetes, and high blood pressure, with an onset date of February 1, 2004 (Tr. 148-51, 178).  This claim was denied administratively on March 16, 2011 (*see* Tr. 99-110).  Plaintiff requested a hearing, which was held on July 25, 2012, before Administrative Law Judge ("ALJ") Bruce R. Mazzarella (Tr. 31-76).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Jay Steinbrenner, an impartial vocational expert ("VE"), also appeared and testified at the hearing.

On September 6, 2012, ALJ Mazzarella issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 15-26).  Following the five-step sequential evaluation process outlined in the Social Security Administration regulations governing claims under Title II (*see* 20 C.F.R. § 404.1520), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date, voluntarily amended at the hearing to September 30, 2009 (the same date as the date plaintiff was last insured for SSDI benefits)[2] (Tr. 18, 20), and at step two that plaintiff's medically

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 7).

[2]The government contends in its supporting brief that because plaintiff amended his alleged onset date to the date last insured, the relevant period of SSDI eligibility is confined to "the single day of September 30, 2009," and that plaintiff has submitted no evidence to establish disability on that day.  *See* Item 13-1, p. 20).  However, as set forth in the Act and regulations, the "insured status" requirement for SSDI benefit eligibility (*see* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.110 to 404.130, 404.130 to 404.133) translates into two required showings: the applicant must have 1) adequate social security earnings to be "fully insured," 20 C.F.R. § 404.110 through § 404.115; and 2) "disability insured status" in the quarter he became disabled or in a later quarter in which he was disabled, 20 C.F.R. § 404.131(a).  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Nolfi v. Astrue*, 2011 WL 3475852, at *4-5 (W.D.N.Y. Aug. 9, 2011); *see also Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989).  Here, plaintiff claims entitlement to SSDI benefits "for a continuous period of not less than 12 months …," 42 U.S.C.

determinable impairments (identified as borderline intellectual functioning, illiteracy, and asymptomatic HIV), were "severe" within the meaning of the Act because they caused significant limitations in plaintiff's ability to perform basic work activities (Tr. 20-21). The ALJ found plaintiff's diabetes, hypertension and "wound infections" to be non-severe (Tr. 21).

At step three of the evaluation, the ALJ found that plaintiff's impairments, considered alone or in combination, did not did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically, Listings 14.08 (*Human immunodeficiency virus (HIV) infection*) and 12.02 (*Organic Mental Disorders*) (Tr. 20–22). The ALJ then found that plaintiff had the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently, sit for an eight-hour workday with normal breaks and meal periods, and stand and walk for an eight-hour workday with normal breaks and meal periods (Tr. 22).[3] The ALJ found that plaintiff was limited to work that did not require reading and writing as an integral part of the job performance (*id.*). Based on this assessment, the ALJ found at the fourth step of the sequential analysis that plaintiff retained the functional capacity to perform his past relevant work as a janitorial cleaner, and was therefore not disabled within the meaning of the Act at any time from the stipulated amended onset date (Tr. 25).

---

§ 423(d)(1)(A), beginning on his alleged onset date and extending up to an including the date of the ALJ's unfavorable decision. *See* Item 14, p. 2, n. 1.

[3]20 C.F.R. § 404.1567(c) provides:

*Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

The ALJ's decision became the final determination of the Commissioner on November 21, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed, or remanded for further consideration, because the ALJ (1) failed to properly assess plaintiff's RFC; (2) failed to adequately consider whether plaintiff met the criteria of Listing 12.05 (*Mental retardation*); (3) denied plaintiff a fair hearing when he refused to allow plaintiff's counsel to reexamine him after the conclusion of the vocational expert's testimony; and (4) failed to properly evaluate the severity of plaintiff's chronic cellulitis. *See* Item 8-1. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence in the record. *See* Item 13-1.

## DISCUSSION

I. **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only

to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who

had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."   42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.   If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is a medically determinable physical or mental impairment, or combination of impairments, that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …."   20 C.F.R. § 404.1520(c); *see also* § 404.1509 (duration requirement).  If the ALJ finds that the claimant's impairment or combination of impairments is not severe, or is not of qualifying duration, the sequential evaluation ends at step two, and the claim is denied.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

If the severity and duration requirements are met, the ALJ then determines at the third step whether the claimant's impairment meets or equals the criteria of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, a limited evidentiary burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); 20 C.F.R. § 404.1560(c)(2).

## III.    The ALJ's Disability Determination

As indicated above, in this case the ALJ followed the sequential analysis through the fourth step, finding that plaintiff's borderline intellectual functioning, illiteracy, and asymptomatic HIV, while severe, did not meet or medically equal the criteria of any listed

impairment, and that plaintiff had the RFC to return to his past relevant work as a janitorial cleaner.  In making this determination, the ALJ first considered whether plaintiff's mental impairments satisfied the criteria of Listing 12.02(B).[4]   Relying on plaintiff's hearing testimony, and citing the reports of consultative medical sources Jacob Piazza, M.D. (Tr. 249), Renee Baskin, Ph. D. (Tr. 254), and Donna Miller, D.O (Tr. 351), the ALJ found that plaintiff had mild restrictions in activities of daily living and concentration, persistence or pace; no difficulties in the area of social functioning; and no episodes of decompensation of extended duration (*see* Tr. 21-22).  The ALJ also found no evidence to establish the presence of "paragraph C" criteria (Tr. 22; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(C)).[5]

In assessing plaintiff's RFC, the ALJ considered plaintiff's hearing testimony about the limitations imposed by his impairments, along with the objective medical evidence regarding his intellectual functioning and asymptomatic HIV.  The ALJ referred to the

---

[4]To satisfy this criteria, the claimant must show (among other things) that his or her impairment resulted in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence or pace; or
    4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02(B) (Paragraph "B" criteria).

[5]A claimant can also satisfy the criteria of Listing 12.02 by presenting a medically documented history of a chronic organic mental disorder of at least two years' duration, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration;
    2. A residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensate;
    3. History of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02(C) ( Paragraph "C" criteria).

results of a consultative adult intelligence evaluation performed by Dr. Baskin on October 15, 2008, during which plaintiff was administered the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III), and scored a verbal scale IQ of 66, performance scale IQ of 81, and full scale IQ of 71, placing him in the borderline range of intellectual functioning (Tr. 24, 253-54).   Dr. Baskin noted the significant difference between plaintiff's verbal and nonverbal problem-solving skills, indicating that plaintiff's cognitive limitations "should not preclude his ability to function in a work place" (Tr. 254).   Dr. Baskin found the results of the overall evaluation to be "consistent with cognitive problems but in itself this does not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis" (*id.*).

With regard to plaintiff's physical impairments, the ALJ referred to records provided by Dr. Norman O. Fiorica, M.D., who treated plaintiff for HIV on several occasions during the years 2000- 2010 (Tr. 293-310).   Dr. Fiorica reported that plaintiff was originally diagnosed with HIV in September 2000, at which time he was noted to be positive for acquired immunodeficiency syndrome ("AIDS"), and was placed on anti-retroviral medication therapy (Tr. 293, 309).   Dr. Fiorica saw plaintiff again in May 2006, at which time he was reassessed as "stable with respect to his HIV disease" without evidence for AIDS (Tr. 308).   Dr. Fiorica saw plaintiff again in November 2007, reporting that plaintiff remained stable on anti-retroviral medication, with normalization of his CD4 lymphocyte count (Tr. 306).   Dr. Fiorica noted that plaintiff had applied for long-term disability on the basis of HIV, poorly controlled diabetes mellitus, hypertension and illiteracy, and indicted that plaintiff "should be considered permanently and totally disabled" (Tr. 307).   Dr. Fiorica

examined plaintiff again in February 2009, summarizing the results of the examination as

follows:

> In summary, [plaintiff] is a 48 year old HIV positive male with history of
> moderate mental retardation, illiteracy, explosive personality disorder,
> uncontrolled diabetes mellitus, hypertension, [and] recurrent cellulitis of the
> extremities.
>
> The recurrent cellulitis is likely related to combination of his HIV disease and
> his poorly controlled diabetes mellitus.
> …
>
> In light of his multiple medical problems, including his learning disability, I do
> not believe that he is capable of working in any capacity at this time.   I
> believe that he is permanently and totally disabled.

(Tr. 304-05).  On follow-up examination in August 2010, Dr. Fiorica reported that plaintiff's

HIV remained under control with medication, but his diabetes mellitus was poorly controlled

due to non-compliance (Tr. 293, 310).  Dr. Fiorica saw plaintiff again in February 2012, and

reiterated his opinion that plaintiff was "incapable of working in any capacity" due to his

multiple medical problems (Tr. 389).

The ALJ gave little weight to Dr. Fiorica's opinion on plaintiff's capacity for work, as

expressed in the February 2009 report, relying instead on the reports consultative

examining sources Drs. Piazza and Miller which indicated that plaintiff experienced no

more than "mild" functional limitations due to HIV and other physical impairments (Tr. 24).

The ALJ stated:

> I don't give Dr. Fiorica's reports much weight as there is no evidence of an
> explosive personality disorder nor any referral by Dr. Fiorica for psychiatric
> care or counseling.   Likewise, there is no evidence that [plaintiff] can't
> understand simple instructions, based upon his performance of activities of
> daily living, which do not require reading and writing skills.
>
> In sum, the … residual functional capacity assessment is supported by the
> consultative examinations.

(Tr. 25).  Based upon that assessment, the ALJ found that plaintiff was capable of performing the physical and mental demands of his past relevant work as a janitorial cleaner, and therefore was not disabled within the meaning of the Act.

## IV.    Plaintiff's Motion

### A.    RFC/Medical Source Opinions

Plaintiff's primary contention in support of reversal and/or remand of the Commissioner's final decision is that the ALJ's RFC assessment is not supported by substantial evidence because it was based on the vague and incomplete findings and opinions of the consultative examiners, unrelated to any specific functional capacities actually retained by plaintiff, and as such was the product of the ALJ's own medical judgment.  According to plaintiff, the ALJ's determination stands in stark contrast to the opinion of Dr. Fiorica, plaintiff's treating source for his HIV condition, that plaintiff was completely and permanently disabled from any work within the relevant period.

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe

-12-

impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010); *see also O'Neil v. Colvin*, 2014 WL 5500662, at *5 (W.D.N.Y. Oct. 30, 2014).

The Second Circuit has repeatedly cautioned that, in making the RFC determination, " 'the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion …. [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.' " *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Where the medical findings in the record "merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567[(a)-(e)] … [the Commissioner may not] make the connection himself." *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908, 912 (N.D.Ohio 2008), *quoted in Walker v. Astrue*, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010), *report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010).

In addition, in evaluating the medical opinion evidence, whether obtained from treating or consultative sources, the ALJ should consider the following factors: (1) the frequency of examination and length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with

the record as a whole; (4) whether the opinion is from a specialist; and (5) whatever other factors tend to support or contradict the opinion.  *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see* 20 C.F.R. § 404.1527(c); *Speilberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) ("These factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts").   The Social Security regulations also recognize a " 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013).  While a treating physician's statement that the claimant is disabled "cannot itself be determinative …," *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").

When the ALJ does not accord controlling weight to the medical opinion of a treating physician, the regulations require that the ALJ's written determination must reflect his consideration of the § 404.1527(c) factors, and must then "comprehensively set forth his

reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted).  The notice of determination must "always give good reasons" for the weight given to a treating source's opinion.  20 C.F.R. § 404.1527(c)(2); *see Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion); *Halloran*, 362 F.3d at 32–33 ("This requirement greatly assists our review of the Commissioner's decision and 'let[s] claimants understand the disposition of their cases.' ") (quoting *Snell*, 177 F.3d at 134).

In this case, as indicated above, the record reflects Dr. Fiorica's somewhat intermittent, but decidedly long-term, treatment of plaintiff over the course of more than a decade, with primary focus on the status of plaintiff's HIV condition.  In November 2007, upon being informed that plaintiff was applying for disability benefits, Dr. Fiorica noted his support for the application and stated his opinion that plaintiff "should be considered permanently and totally disabled" due to the combined effects of his HIV disease, poorly controlled diabetes mellitus, hypertension, and illiteracy (Tr. 307);  in February 2009, upon re-examination and review of plaintiff's history of multiple medical problems, Dr. Fiorica stated that he did not believe plaintiff was capable of working in any capacity, and reiterated his opinion that plaintiff was permanently and totally disabled (Tr. 304-05); and in February 2012, Dr. Fiorica again stated that plaintiff's multiple medical problems–including learning disability, illiteracy, explosive personality disorder, chronic HIV disease, recurrent episodes of cellulitis due to chronic immunosuppression, and poorly controlled diabetes mellitus–have rendered him "incapable of working in any capacity at this time" (Tr. 389).

As noted, the ALJ did not give controlling weight to Dr. Fiorica's opinion–indeed, he did not give it much weight at all–stating simply that Dr. Fiorica's "opinion of total disability is reserved to the Commissioner and is inconsistent with the consultative reports [of Drs. Piazza and Miller]" (Tr. 25).   In the court's view, this explanation is inadequate under the requirements of the regulations governing the ALJ's evaluation of medical source opinion evidence.   For one thing, it provides no basis for the court to make a reasoned determination as to whether the ALJ fully considered the length, nature, and extent of the various medical sources' treatment relationships with plaintiff in assigning virtually no weight to  Dr. Fiorica's consistently stated opinion on the nature,  severity, and combined effect of plaintiff's impairments, while deriving substantial support from the reports of one-time consultative examiners.   In addition, to the extent the medical source statements in the consultative examiners' reports can be said to express reasoned judgments about the nature and severity of plaintiff's impairments, the ALJ's determination contains no indication that he considered any of the § 404.1527(c) factors in deciding the weight to be given those statements.

Moreover, the court's review of the consultative examiners' reports reveals very little information regarding plaintiff's exertional limitations that would allow the ALJ to relate the examiners' diagnostic findings to plaintiff's specific residual functional capacity for medium work.   For example, Dr. Piazza stated that his examination of plaintiff in October, 2008–before the alleged onset date of September 30, 2009–indicated only "mild limitation for physical exertion due to the fatigue he feels from the HIV and HIV medications" (Tr. 251), and Dr. Miller made no findings and offered no opinion with respect to plaintiff's functional limitations (*see* Tr. 250-53).   Considering the consistency of Dr. Fiorica's

repeated opinions that plaintiff suffered from multiple impairments preventing him from performing work in any capacity during the alleged period of disability, as contrasted with the consultative examiners' relative silence in this regard, the court must conclude that the ALJ committed error in assessing the weight to be given to the findings and opinions of medical sources.

For these reasons, and upon review of the administrative record as a whole, the court finds that the ALJ's RFC assessment in this case was based on a misapplication of the regulations and case law governing consideration of the findings and opinions of treating and consultative medical sources, with the result that the Commissioner's denial of plaintiff's claim for SSDI benefits is not supported by substantial evidence.  Accordingly, the matter must be remanded to the Commissioner for further consideration in accordance with the matters discussed herein.  On remand, the Commissioner shall consider "[a]ny issues relating to [plaintiff's] claim …," 20 C.F.R. § 404.983, including but not limited to the ALJ's failure to consider whether plaintiff met the criteria of Listing 12.05; the fairness of the hearing; and the severity of plaintiff's chronic cellulitis.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Item 8) is granted, the Commissioner's motion for judgment on the pleadings (Item 13) is denied, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the matters discussed above.

The Clerk of the Court is directed to enter judgment in favor of plaintiff, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   November 20, 2015
p:\pending\2014\14-33.ssdi.nov3.2015